Sidney H. Asch, J.
Defendant R. H. Macy & Co. Inc. moves to dismiss the complaint of plaintiff Zachary for failure to state an individual cause of action and for failure of both plaintiffs to state a representative cause of action. It seeks an order striking the portions of the complaint alleging that the action is brought on behalf of plaintiffs and all other persons similarly situated who have entered into retail installment credit agreements with the defendant.
Plaintiffs cross-move for summary judgment and an assessment of damages, or in the alternative to stay consideration of defendant’s motion to dismiss the complaint pending determination of the merits of plaintiffs’ claims.
This action is one of five almost identical ones brought against well-known department stores.
In the first cause of action, plaintiffs allege that defendant imposed a finance charge on the “ previous balance ” of plaintiffs (the outstanding balance of the account at the beginning of the billing cycle without deducting payments made during that billing cycle) and the accounts of similarly situated class members. They charge that such failure to deduct payments during the billing cycle violates subdivision 3 of section 413 of the Personal Property Law. On the basis of these alleged violations, plaintiffs claim that they and all those similarly situated are entitled to recover from the defendant, pursuant to section 414 of the *976 same law, an amount equal to the total finance charges imposed on each of them.
In the second cause plaintiffs claim that defendant has imposed on members of the alleged class, finance charges on the ‘ ‘ previous balance ”, computed upon previously imposed finance charges. This, they contend, violates public policy and subdivision 3 of section 413 of the Personal Property Law and entitles them to recover from the defendant an amount equal to the total finance charges imposed on the accounts of each of them for an unspecified period of time.
Both of plaintiffs ’ causes of action purportedly arise from subdivision 3 of section 413 of the Personal Property Law which provides:
“ 3. A seller may, in a retail instalment credit agreement, contract for and, if so contracted for, the seller or holder thereof may charge, receive and collect the service charge authorized by this article. The service charge shall not exceed the following rates computed, for the purposes of this section, on ti^e outstanding indebtedness from month to month:
“ (a) On so much of the outstanding indebtedness as does not exceed five hundred dollars, one and one-half per centum per month;
“(b) If the outstanding indebtedness is more than five hundred dollars, one per centum per month on the excess over five hundred dollars of the outstanding indebtedness ”,
Defendant, in support of its motion, submits an affidavit together with exhibits which show that plaintiff Zachary did not make a payment of any portion of her previous balance prior to the date defendant assessed the finance charge to her account. Exhibit D indicates that defendant did not receive any payment from Zachary for items purchased starting August 12,1970 until September 24,1970 which was five days subsequent to the closing date of the monthly billing cycle, the date on which the finance charge was assessed.
Since she failed to make any payment by the closing date of the billing cycle in which the finance charge was imposed, she has in no way been affected by the complained of practice.
Plaintiffs have neither alleged nor do the undisputed facts show that the finance charges imposed on their accounts exceeded the rate permitted under subdivision 3 of section 413 of the Personal Property Law.
Plaintiff Zachary’s account has only been subject to one finance charge, assessed as of the billing cycle closing September 19, 1969. This charge was imposed solely on the amount of *977 plaintiff Zachary’s purchase made during the preceding billing period closing August 20, 1970. Her account was never subject to “ finance charges imposed on previous finance charges ”. It thus appears that plaintiff Zachary, herself not having been subject to or in any way affected by the practices complained of, cannot maintain a cause of action based on such practices. On the papers presented, it is not entirely clear as to whether plaintiff Salacuse has a cause of action in his individual capacity.
A representative action cannot be maintained unless the plaintiff has alleged facts that support an individual cause of action and demonstrate the plaintiff is representative in interest with others (Bouton v. Van Buren, 229 N. Y. 17).
Tinder the rulings in a series of cases over a span of many years CPLR 1005 (subd. [a]) has been construed to require the plaintiff to demonstrate as a condition precedent to a class suit not only that plaintiff has a cause of action, but that he is bound by a “ unity of interest ’ ’ with other members of the alleged class. Identical contracts, contract provisions, or even identical wrongs are insufficient to support the necessary ‘ ‘ unity of interest” requirement (Society Milion Athena v. National Bank of Greece, 281 N. Y. 282 ; Challenger v. Household Finance Corp., 179 Misc. 966 affd. 266 App. Div. 844 ; Noel Holding Corp. v. Carvel Dari-Freeze Stores, 140 N. Y. S. 2d 640, affd. 286 App. Div. 1066 ; Goodman & Co. v. New York Tel. Co., 285 App. Div. 404, affd. 309 N. Y. 258 ; Onofrio v. Playboy Club of N. Y., 15 N Y 2d 740 ; Gaynor v. Rockefeller, 15 N Y 2d 120 ; Coolidge v. Kaskel, 16 N Y 2d 559).
It would exhaust the talents of a convocation of talmudists and scholastics to attempt to reconcile what the Court of Appeals has charitably described as “ some inconsistency ” in the earlier cases. However, not a single case in this State permits a class action to recover a statutory remedy as sought in this action.
Indeed, the Legislature by re-enacting the same statutory prescription for a class suit, has ratified the court’s construction and has rejected the very judicial legislation which plaintiffs attempt to bring about (Hall v. Coburn Corp. of Amer., 26 N Y 2d 396 ; Gaynor v. Rockefeller, supra ; Pouch v. Prudential Ins. Co., 204 N. Y. 281 ; Matter of Hotel Assn. of N. Y. City v. Weaver, 3 N Y 2d 206 ; Matter of City of New York [Exterior St.], 285 N. Y. 455 ; Kent v. Jamestown St. Ry. Co., 205 N. Y. 361 ; Matter of Schinasi, 277 N. Y. 252 ; Feder v. Caliguira, 8 N Y 2d 400 ; Orinoco Realty Co. v. Bandler, 233 N. Y. 24 ; Onofrio v. Playboy Club of N. Y., supra ; Coolidge v. Kaskel, supra ; cf. CPLR 1005 (subd. [a] with Civ. Prac. Act, § 195 ; see, also, *978 Eighteenth Annual Report of N. Y. Judicial Council, 1952, 80, 217, 231 ; First Preliminary Report of Advisory Committee on Practice and Procedure, N. Y. Legis. Doc., 1957, No. 6[b], pp. 34-36 ; Fifth Report, N. Y. Legis. Doc., 1961, No. 15, pp. 307-308 ; Sixth Report, N. Y. Legis. Doc., 1962, No. 8, p. 153).
The most recent expression of the Court of Appeals concerning representative actions and of particular relevance to the matter at bar is Hall v. Coburn Corp. of Amer. (supra). That case, as the instant one, involved an action brought by individuals on behalf of themselves, and all individuals who entered, into identical credit agreements. It asserted similar violations of New York’s Personal Property Law.
In Hall, plaintiffs bought certain property under the retail sales contracts which were subsequently purchased by defendant corporation. Plaintiffs alleged that these contracts (standard forms prepared by defendant corporation) breached section 402 of the Personal Property Law. Defendant in the lower court moved to dismiss the plaintiffs ’ complaint on the ground, inter alia, that a cause of action was not stated, and for lack of an appropriate class. The lower court dismissed the class action on the grounds that the plaintiffs did not have a common bond and were not united in interest.
The Court of Appeals unanimously affirmed the lower court’s ruling dismissing the class action. In writing the opinion for the court, Judge Bergak addressed himself to plaintiffs’ assertion of unity of interest and common bonds, as follows (p. 400):
1 ‘ To permit the maintenance of a class action by one contracting party on behalf of others who made different contracts solely because of a similarity in form of the instrument of contract would enlarge greatly the scope of the New York class action permitted by CPLR 1005 (subd. [a]) as it, and its identical predecessor, section 195 of the Civil Practice Act, have been construed by this court.
“ One thing seems clear from these decisions: that there must be more of a common interest than the fact that a number of persons made a number of quite different and unrelated contracts with a number of different and unrelated sellers using the same written form which is claimed to be illegal. This does not become a common question because the same finance company is the assignee of the contracts and prepared them for use by the contracting parties.”
This court is not unmindful of the increasing receptivity by other courts toward permitting class actions (see Carroll v. *979 American Federation of Musicians, 372 F. 2d 155 [2d Cir., 1967] ; Esplin v. Hirschi, 402 F. 2d 94 [10th Cir., 1968] ; Eisen v. Carlisle & Jacquelin, 391 F. 2d 555 [2d Cir., 1968] ; Green v. Wolf Corp., 406 F. 2d 291 [2d Cir., 1968] ; Zachary v. Chase Manhattan Bank, decided April 29,1971 [S. D., N. Y.] ; Vasquez v. Superior Ct. of San Joaquin County, 4 Cal. 3d 800). However, there is no longer a tabula rasa in New York upon which this court can inscribe a new formula for initiating a class suit.
Neither Zachary nor Salacuse, therefore, can pursue a representative action. And while Zachary does not make out even an individual claim, procedurally, Salacuse sets forth an individual claim which is somewhat ambiguous. However, giving the claim of Salacuse a most favorable construction, it too must fall if the defendant, R. H. Macy and Co., Inc. is not violating the law by its method of computing finance charges. Economy of judicial effort, as well as that of the parties, dictates that this court consider this substantive issue, rather than require plaintiff Salacuse to replead.
Defendant’s method of computing finance charges on revolving charge accounts has been employed by retailers and others to the extent of millions of statements monthly, both before and after the enactment in 1957 of the New York Personal Property Law provisions. It has been used with the full acquiescence of the New York State Legislature. Since 1957, bills have been introduced time after time to amend subdivision 3 of section 413 so as to invalidate the previous balance method of computing finance charges employed by defendant, but these efforts have been rejected consistently (see, e.g., Sen. Intro. 397 [1961] ; Sen. Intro. 385 [1963] ; Sen. Intro. 2379 and Ass. Intro. 2728 [1971] ; Report of Joint Legislative Comm. on Commerce and Econ. Dev. [N. Y. Legis. Doc., 1961, No. 79] ; see, also, Reports of Comm. of State Leg., Assoc. of Bar of City of N. Y. No. 27 [1961], No. 13 [1963] ; Hennessey v. Personal Finance Corp., 176 Misc. 201). This legislative intention is supported by the history of the enactment and repeal of the New York Truth-in-Lending Act (L. 1968,. ch. 1072, § 33 ; L. 1969, ch. 1141, § 1) and that of the Federal Truth-in-Lending Act (U. S. Code, tit. 15, § 1601 et seq.).
Defendant’s computation of finance charges on a balance which may include unpaid finance charges does not violate the Personal Property Law or public policy of New York (cf. §§ 404 and 413). The deliberate use in section 413 of the phrase “ outstanding indebtedness ” rather than the phrase “ principal *980 balance ” reflects the Legislature’s recognition and intention that a finance charge may be imposed on unpaid finance charges (see Household Finance Corp. v. Goldring, 263 App. Div. 524, affd. 289 N. Y. 574).
Finance charges under a retail installment credit agreement do not constitute interest (Tierney Sons v. Bajowski, 233 App. Div. 766, affd. 258 N. Y. 563 ; see, e.g., Dry Dock Bank v. American Life Ins. & Trust Co., 3 N Y 344 ; Mandelino v. Fribourg, 23 N Y 2d 145). It is not illegal to charge interest upon interest if there is such an agreement based on valid consideration (Newburger-Morris Co. v. Talcott, 219 N. Y. 505 ; Household Finance Corp. v. Goldring, supra) and an action to secure refund of compounded interest does not lie (Young v. Hill, 67 N. Y. 162 ; Baker v. Equitable Life Assur. Soc., 288 N. Y. 87 ; Mills v. Equitable Life Assur. Soc., 262 App. Div. 907).
Current retail credit practices have been subjected to substantial criticism (Curran, Legislative Controls as a Response to Consumer Credit Programs, 8 B.C. Ind. and Com. L.R. 409 [1967] ; Caplovitz, Consumer Credit in the Affluent Society, 33 Law and Contemp. Probl. 64 [1968] ; Benfield ; Money, Mortgages and Migraine, 19 Case Wes. Res. L. Rev. 819 [1968] ; Report of the National Advisory Comm. on Civil Disorders [1967], pp. 274-276) and the method of computing charges which is under attack in this case had been disavowed (Op. No. 4706, dated August 11, 1970, Michigan Retail Installment Sales Act; letters of Hon. Persia Campbell, Consumer Counsel to Gov. A. Harriman, in Bill Jacket, dated March 15, 1957, concerning enactment Art. 10, Retail Installment Sales Act ; Montgomery Ward & Co. v. O’Neil, Minn. Dist. Ct., 2d Jud. Dist. decided April 1, 1971 ; Troelstrup, The Consumer in American Society [4th Ed. 1969]).
An argument that the credit contracts used by the defendant are “ unconscionable ” under section 2-302 of the Uniform Commercial Code and hence unenforceable (e.g. Frostifresh Corp. v. Reynoso, 52 Misc 2d 27 ; Matter of State of New York v. ITM Inc., 52 Misc 2d 39 ; David v. Manufacturers Hanover Trust Co., 59 Misc 2d 248 ; see, Explanation, McKinney’s Cons. Laws of N. Y., Book 62%, Uniform Commercial Code, Part I, pp. III-XXV ; The Interpretation of Contracts in New York under the Uniform Commercial Code, Unconscionable Contracts, 51 Cornell L. Q. 768 [1966] ; Analyzing Unconscionability Problems, 117 U. Penn. L. Rev. 931 [1969] ; In Defense of Unconscionability, 78 Yale L. J. 757 [1969] ; Unconscionability under the Uniform Commercial Code, 10 S. Texas L. J. 203 [1968] ; U.C.C.’s Solu *981 tion for Unconscionable Contracts, 48 Ore. L. Rev. 209 [1969] ; Asch “Unconscionable” Sales Contracts in New York, 17 Advocate 65 [1970]) is not available. In vain one holds Hall v. Coburn (26 N Y 2d 396, supra) up to the light, turns it upon its axis to find obscure facets, it persistently bars the claims of plaintiffs. This court has an open mind but its authority to rule in favor of plaintiffs is closed by the controlling authorities.
The actions herein represent an idea whose time may have come, but perhaps unfortunately, not in the courts of the State of New York. No matter how one studies the applicable cases and legislative history, the result is the same.
Accordingly, the motion of defendant to dismiss the complaint of plaintiffs is granted. The cross motion of plaintiffs for summary judgment, or in the alternative, for a stay of defendant’s motion is denied in all respects.