CAROLINE P. VAN BUREN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 40380-84.        Filed December 7, 1987.

*Richard P. Covey,* for the petitioner.
*Brian S. Masumoto, Raymond Canals,* and *Ralph A. Eppensteiner,* for the respondent.

OPINION

KÖRNER, *Judge:* Respondent determined a deficiency of $15,316.07 in petitioner's 1981 Federal income tax. The issue for our determination is whether the character (as between taxable and tax-exempt income) of amounts reportable by the beneficiary of a simple trust is determined solely by the trust's internally generated income, or whether

the character of amounts received by the trust in a distribution from an estate also enters into the determination.

This case was submitted fully stipulated pursuant to Rule 122.[1] The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Petitioner was a resident of New York, New York, at the time the petition herein was filed. Her income tax return was filed on the calendar year basis.

Petitioner is the beneficiary of a testamentary trust created by the will of her late husband, Maurice P. van Buren, who died a resident of New York on May 8, 1979.[2] The terms of the trust require the trustee to distribute all net income to or for the benefit of petitioner at least annually during her life. The trust instrument also authorizes distribution of principal to petitioner, as might be needed for her support, although no such principal distributions were made during the taxable year at issue. The trust contains no provision authorizing amounts to be paid or permanently set aside for charitable purposes. The trust therefore qualifies as a "simple" trust during the taxable year at issue. Sec. 651; sec. 1.651(a)-1, Income Tax Regs. Upon petitioner's death, one-half of the remaining trust principal is to be distributed in accordance with petitioner's testamentary general power of appointment. The remaining one-half is to be distributed to certain specified beneficiaries. The trust has a taxable year ending May 31.

For its taxable year ended June 30, 1980, the Estate of Maurice van Buren generated $110,491[3] of distributable net income (hereinafter DNI) consisting of dividends, taxable and tax-exempt interest, and other income.[4] Apparently

---

[1]All statutory references are to the Internal Revenue Code of 1954 as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.

[2]Maurice van Buren's will was admitted to probate by the Surrogate's Court of New York County on May 22, 1979. Testamentary trusts are generally governed by the law of the State where the testator was domiciled. See *Schaffner v. Chemical Bank,* 339 F. Supp. 329 (S.D. N.Y. 1972). Therefore, as pertinent here, the law of the State of New York will control. See further discussion, *infra.*

[3]All amounts have been rounded to whole dollars.

[4]Basically, the DNI of an estate or trust consists of its taxable income (calculated in much the same manner as that of an individual) increased by the amount of its personal exemption, any tax-exempt income and any distribution deductions taken pursuant to sec. 651 or 661. Taxable income is reduced by any capital gains of the estate or trust which are allocable to principal. Sec. 643(a).

without distributing these funds (at least to petitioner), the estate made a distribution of principal to the testamentary trust, which consisted partly of common stocks and partly of tax-exempt municipal bonds. Pursuant to section 662, this distribution caused a portion of the estate's DNI to be carried out and taxed to the trust,[5] resulting in the inclusion of $26,253 of dividends and $40,523 of other taxable income in the income of the trust for its taxable year ended May 31, 1981.[6] Although the estate principal distribution constituted income to the trust for tax purposes, it retained its character as principal in the hands of the trust for fiduciary accounting purposes.[7] The parties are not in disagreement as to any of this.

In addition to income attributable to the trapping distribution of principal from the estate, the instant trust also generated $7,648 of taxable dividends, and $41,450 of tax-exempt interest from its own investments, for total income of $49,098, for its fiscal year 1981. This is the trust income as determined for fiduciary accounting purposes which was required, per the trust instrument, to be distributed to petitioner. The trust also paid $3,977 of trustee's commissions and $333 of New York State income tax with respect to this income.

---

[5] A distribution from an estate results in income to the recipient to the extent of the estate's DNI, regardless of its designation as income or principal for accounting purposes. Sec. 662; sec. 1.662(c)-3, Income Tax Regs. The estate is entitled to a concomitant distribution deduction equal to the beneficiary's required income inclusion under sec. 662. Sec. 661. This avoids "double taxation" of the estate's income to both the estate and the beneficiary and is basic to an understanding of the estate as a conduit. H. Rept. 1337, 83d Cong., 2d Sess. A194 (1954); S. Rept. 1022, 83d Cong., 2d Sess. 343 (1954). The same principles apply to distributions from a trust. Secs. 651, 652.

[6] The income inclusion consists of the same proportion of each class of income entering into the DNI of the estate, as the total of that class of income bears to the total DNI of the estate. Sec. 662(b), sec. 1.662(b)-1, Income Tax Regs.

The estate Form K-1 also shows $941 of tax-exempt income carried out to the trust by the principal distribution. This amount was ignored by petitioner and omitted from respondent's deficiency notice.

[7] Under New York law, a distribution from an estate to a trust is not "income" of the trust unless the items distributed were "income" of the estate. See generally New York Estates, Powers & Trusts Law sec. 11-2.1 (McKinney 1967). Thus the amount of the distribution was not income required to be distributed to petitioner.

The distribution of principal from an estate to a simple trust is commonly called a trapping distribution. The purpose of an estate distribution of principal to a trust is to take advantage of the trust's status as a separate taxpayer to ameliorate the effect of the graduated tax brackets on the estate's income. The distribution causes a portion of the estate's income to be "carried out" and taxed to the trust. When the principal distributed by the estate also constitutes trust principal, it is not taxed to the income beneficiaries of a simple trust. Secs. 651, 652. The taxable income is thus "trapped" at the trust level. See generally Cohan & Frimmer, "Trapping Distributions—The Trap that Pays," 112 Trusts & Estates 766 (1973).

For calendar year 1981, petitioner calculated that she had realized $44,788 of income consisting of $6,696 of taxable income, and $38,092 of tax-exempt income attributable to her interest in the $49,098 of income internally generated by the trust in its taxable year ended May 31, 1981.[8] In determining the character of the income, petitioner ignored the trust DNI attributable to the "trapping" distribution from the estate. Her calculations are summarized as follows:

|  | Tax-exempt | Taxable dividends | Total |
|---|---|---|---|
| Internally generated trust accounting income | $41,450 | $7,648 | $49,098 |
| Less: | | | |
| Trustee's commissions: | | | |
| Allocable to tax-exempt income (41,450/49,098) × 3,977 | (3,358) | | (3,358) |
| Allocable to taxable income (7,648/49,098) × 3,977 | | (619) | (619) |
| Taxes | | (333) | (333) |
| Petitioner's income from trust | 38,092 | 6,696 | [9]44,788 |

In a notice of deficiency dated September 7, 1984, respondent determined a deficiency in petitioner's income tax for taxable year 1981 of $15,316.07. He attributed the deficiency to petitioner's failure to take into consideration the trust DNI attributable to the trapping distribution in determining the amount and character of her income attributable to her interest in the trust. Respondent determined that petitioner had $49,098 of income from the trust consisting of $13,649 of dividends, $17,834 of other taxable income, and $17,615 of tax-exempt income. His calculations are summarized on p. 1105.

---

[8]The gross income inclusion of a trust beneficiary pursuant to sec. 652, is based on the trust's income for the taxable year of the trust which ends with or within the beneficiary's taxable year. Sec. 652(c).

[9]Petitioner's calculations indicate that she also excluded consideration of the trust DNI attributable to the trapping distribution from her determination of the *amount* of the distribution which constitutes income to her as well as its *character*. Petitioner calculated the DNI of the trust attributable to its accounting income as being $44,788. The $44,788 thus formed the upper limit (she claimed) on her income inclusion by reason of the $49,098 of accounting income required to be distributed to her. Sec. 651(b). However, on brief, petitioner acknowledges that since the $49,098 is less than the DNI of the trust as a whole, the sec. 651(b) ceiling rule does not apply.

Petitioner also seems to have conceded that trust expenses should have been allocated between tax-exempt and taxable income based on the income of the trust as a whole, rather than upon only that portion which constitutes trust accounting income. See sec. 1.652(b)-3, Income Tax Regs.

Each of these adjustments would affect both the amount and character of petitioner's income from the trust.

|  | Tax-exempt | Dividends | Other taxable | Total |
|---|---|---|---|---|
| Internally generated trust accounting income | $41,450 | $7,648 |  | $49,098 |
| Income attributable to trapping distribution |  | 26,253 | $40,523 | 66,776 |
|  | 41,450 | 33,901 | 40,523 | 115,874 |
| Less: |  |  |  |  |
| Trustee's commissions: |  |  |  |  |
| Allocable to tax-exempt income (41,450/115,874) × 3,977 | (1,423) |  |  | (1,423) |
| Allocable to taxable income ((33,901 + 40,523) / 115,874) × 3,977 |  | (2,554) |  | (2,554) |
| Taxes |  | (333) |  | (333) |
| Trust distributable net income (DNI) | 40,027 | 31,014 | 40,523 | 111,564 |
| Petitioner's allocable share of each item constituting trust DNI (49,098/111,564) | 44.01% | 44.01% | 44.01% | 44.01% |
| Petitioner's income from trust | 17,615 | 13,649 | 17,834 | 49,098 |

Petitioner made timely petition to this Court for redetermination of the deficiency on December 3, 1984.

Subchapter J of subtitle A of the Internal Revenue Code governs the tax treatment of trust distributions. A "simple" trust is a trust which is required to distribute all of its accounting income[10] currently, does not make any distributions of other than current income, and does not provide that any amounts be paid or permanently set aside for charitable purposes. Sec. 651(a); sec. 1.651(a)-1, Income Tax Regs. The record establishes that the trust herein was a simple trust during the taxable year at issue.

The beneficiary of a simple trust is required to include in her income the trust accounting income which is required to be distributed to her currently, whether distributed or not. Sec. 652(a); sec. 1.652(a)-1, Income Tax Regs. However, the accounting income of the trust is not taxed to the beneficiaries to the extent it exceeds the trust's distributable net income (DNI), as defined in section 643(a). Sec. 1.652(a)-2, Income Tax Regs.

The DNI concept not only places an upper limit on the amount of the distribution includable in the beneficiary's income, but determines its character as well. The amounts included in the beneficiary's income are treated as consisting of the same proportion of each class of income entering into trust DNI as the total of each class bears to such DNI, unless the terms of the trust specifically allocate different classes of income to different beneficiaries, or unless local law requires such an allocation. Sec. 652(b); secs. 1.652(b)-1, 1.652(b)-2, Income Tax Regs.

The distribution of assets by the estate to the trust is taxable to the trust to the extent of the estate's DNI, even though under local law such distribution may be principal in the hands of the trust. Sec. 662(a)(2); *Harkness v. United States*, 199 Ct. Cl. 721, 469 F.2d 310 (1972), cert. denied 414 U.S. 820 (1973); *Casco B&T Co. v. United States*, 406 F. Supp. 247 (D. Me. 1975). The parties are not in disagreement on this, and have stipulated as to the amount and

---

[10]As used in subch. J, the term "income," when not preceded by the words "taxable," "distributable net," "undistributed net," or "gross," means the income of the trust as determined under the trust instrument and applicable local law. Sec. 643(b). For clarity, we refer to this concept as "accounting income."

character of the taxable income received by the trust, as we have found.

The income of the trust—both that received from the estate as well as the trust's internally generated income—is then computed under sections 641 and 642, and both the above elements go into the computation of the trust's DNI under section 643. Here, an apparent paradox arises in that the distribution from the estate to the trust—the trapping distribution—although part of the trust's DNI under section 643, is nevertheless not distributable to the income beneficiary, but remains in the hands of the trust as corpus under local law. [11] The oxymoron of "undistributable distributable net income" is explained by the fact that although the trust's DNI is computed under section 643, that which is required to be distributed to the beneficiary, taxable to her under section 652, with corresponding deduction to the trust under section 651, is governed by the standards of the trust instrument, which specifies that only the net accounting income of the trust is to be distributed.

We now examine petitioner's position in light of this statutory framework. Respondent's deficiency determination is presumptively correct and petitioner bears the burden of proving it erroneous. *Welch v. Helvering,* 290 U.S. 111, 115 (1933); Rule 142(a).

Petitioner contends that she falls within the exception to proportionate allocation which applies when specific allocations of different classes of income to different beneficiaries are contained in the trust instrument or required by local law. Sec. 1.652(b)-2, Income Tax Regs. She argues that the various classes of income constituting DNI must be allocated in the same manner as the same dollars are allocated between principal and income for fiduciary accounting purposes by the trust instrument. Petitioner argues that her method is consistent with the economic substance of the arrangement and accords with the general conduit approach of subchapter J.

---

[11] The treatment of trapping distributions, similar to the instant case— that such distributions, while includable in the taxable income of the trust to the extent of the DNI of the estate, are nevertheless to be considered as distributed to the beneficiary only if authorized by the trust instrument or local law—was clearly recognized in *United States v. Bank of America NT&S Association,* 326 F.2d 51, 53-55 (9th Cir. 1963), affg. in part 203 F. Supp. 152 (N.D. Cal. 1962).

Petitioner correctly states that the trust instrument bestows the income of the trust upon one beneficiary and the trust principal to others. However, petitioner's assertion that the particular classes of income which constitute trust DNI must therefore be allocated to the persons entitled to receive the principal or income of the trust which gives rise to those particular classes of income is wholly without support in either the language of the trust instrument itself, or in applicable provisions of New York law.

To the extent petitioner equates the terms "principal" and "income" as used in the trust instrument with the "different classes of income" referred to in section 652 and the regulations thereunder, she is mistaken. The different classes of income referred to in the statute and regulations are dividends, tax-exempt interest, capital gains, etc., whose designation as such will have tax significance to the recipient. See Kamin, Surrey & Warren, "The Internal Revenue Code of 1954: Trusts, Estates and Beneficiaries," 54 Colum. L. Rev. 1237, 1246 (1954). The allocations under the trust instrument are not in terms of different classes of tax income, but rather in terms of State law definitions differentiating trust income from corpus. As to allocation of different classes of income constituting DNI, both the trust instrument and local law are silent. Since neither the trust instrument nor State law provides for an allocation of different classes of income to different beneficiaries, the exception relied upon by petitioner does not apply and the different classes of income comprising trust DNI must be allocated between petitioner and the trust proportionately. Sec. 1.652(b)-2, Income Tax Regs.

The objectives of the reforms in the area of estate and trust income taxation embodied in subchapter J weigh against petitioner. Prior to the adoption of the 1954 Code, the beneficiary of a trust was taxed on a trust distribution only to the extent it was made from the current income of the trust as determined under local trust law. Sec. 162(b), I.R.C. 1939; H. Rept. 1337, 83d Cong. 2d Sess. 60 (1954). Thus, a tracing of amounts distributed to their source was necessary in order to determine the distribution's taxability to the beneficiary. The concept of DNI was introduced in subchapter J precisely to avoid the often onerous task of

tracing the source of trust distributions. S. Rept. 1622, 83d Cong., 2d Sess. 82, 349 (1954); H. Rept. 1337, 83d Cong., 2d Sess. 60, A199 (1954). The DNI concept eliminates the tracing requirement by presuming that a distribution is made out of the trust's DNI to the extent thereof, regardless of whether the distribution was actually made from income or principal. In this respect, DNI serves much the same function as do earnings and profits in the area of corporate distributions. To eliminate the tracing requirement for determining the *amount* of the required distribution constituting income to the beneficiary yet retain it for *characterizing* the income would negate one of the major simplifications over prior law accomplished by subchapter J. Tracing is only permitted in the limited cases where the trust instrument or local law *specifically* requires a nonproportionate allocation of classes of income among beneficiaries. This is not such a case.

Petitioner's reliance on cases which have found a tracing requirement pursuant to the availability of a charitable deduction to the trust is misplaced. Section 642(c)(1) allows a trust a charitable deduction for any amount of its gross income which, pursuant to the trust instrument, is paid for charitable purposes. Sec. 642(c)(1). Tracing is required since the statute specifically requires that the source of the contribution be gross income. See *Riggs National Bank v. United States,* 173 Ct. Cl. 479, 352 F.2d 812, 814 (1965). This specific reference forms the basis for a limited exception to the general removal of the tracing requirement accomplished by subchapter J. The exception is limited to the area of charitable deductions and provides no support to petitioner. See *Mott v. United States,* 199 Ct. Cl. 127, 462 F.2d 512, 518-519 (1972).

Finally, we note that a specific allocation of different classes of income is only given effect if it has economic consequences aside from the income tax effect. Sec. 1.652(b)-2(b), Income Tax Regs. Even had petitioner been successful in persuading us that the trust instrument required the allocation of different classes of income to different beneficiaries, the allocation would not be effective since its only economic consequences would be tax related. The trust entitles the petitioner to the net accounting income gener-

ated by the trust. In taxable year 1981, this amount was $49,098, less commissions and local taxes totaling $4,310. Petitioner is entitled to $44,788 no matter how it is characterized. A specific nonproportionate allocation of items of trust income to petitioner would affect her tax liability, but would neither increase nor decrease the dollar amount to which she is entitled under the instrument.

To summarize, we conclude that neither the trust instrument nor local law specifically allocates different classes of income to petitioner. Petitioner's income from the trust thus consists of the same proportion of each class of income constituting the DNI of the trust as the total of each class of income bears to the total DNI of the trust. To this extent, therefore, we approve respondent's computation of the trust's DNI, his determination of the various classes of income, and his allocation of deductions among the various classes, as contained in his computation which we have reproduced above herein.

As to two further matters, however, we consider that respondent's computation was in error:

*First.* In his computation of petitioner's allocable share of each item constituting trust DNI, respondent constructed a fraction, in which the numerator was the *gross* internally generated trust income, and the denominator was the trust distributable *net* income. The fraction was 44.01 percent. This was clearly erroneous; the proper fraction or percentage of petitioner's allocable share was the *gross* internal income ($49,098) divided by the *gross* trust income ($115,874), or 42.37 percent.[12]

*Second.* Respondent then applied his erroneous percentage to each item or class of the trust's distributable *net* income, with the result that the amount of each class of income which was allocated to petitioner was in *gross,* depriving petitioner of the benefit of any deductions which pertained to that class of income.

The purpose of the 1954 Code, expressed in section 652(b), was to give to the income beneficiary the benefit of all deductions attributable to taxable income which was distrib-

---

[12]The proof of this proposition is that if respondent had used his same method to compute the *trust's* allocable share of trust DNI, he would have gotten a percentage of 59.85 (66,776 ÷ 111,564) which, when added to petitioner's percentage of 44.01, would have totaled 103.86 percent—more than the entire trust DNI.

uted to her, excluding those deductions attributable to tax-exempt income. *Tucker v. Commissioner*, 322 F.2d 86 (2d Cir. 1963), affg. 38 T.C. 955 (1962). Respondent's regulations carry out this intention, providing that after allocating a proportionate part of the expenses to tax-exempt income, and after excluding capital gains (there were none here) from the allocation computation, the remaining deductions not directly attributable to a specific class of income "may be allocated to the [taxable income] in such proportions as the trustee may elect." Sec. 1.652(b)-3, Income Tax Regs. We think it is clear, both from the way the income was reported, as well as from petitioner's computation herein, that it was the trustee's intention that petitioner should have the benefit of all available deductions. This position is also in conformity with the trust instrument, which gave petitioner the right to the *net* income of the trust.

We conclude, then, that the proper computation of petitioner's income from the trust for 1981, under section 652, is as follows:

|  | Tax-exempt | Taxable dividends | Other taxable | Total |
|---|---|---|---|---|
| Petitioner's allocable share of each item (gross) forming part of trust DNI 49,098 ÷ 115,874) | 42.37% | 42.37% | 42.37% | 42.37% |
| Petitioner's share (gross) | $17,562 | $14,364 | $17,170 | [13]$49,096 |
| Less allocable deductions | (1,423) | (2,554) |  | (3,977) |
|  |  | (333) |  | (333) |
| Petitioner's reportable income from trust | 16,139 | 11,477 | 17,170 | 44,786 |

To give effect to the above,

*Decision will be entered under Rule 155.*

---

[13]The $2 difference, compared to respondent's computation, results from rounding the percentage to two decimal places. See also note 3.