Alain MONIZ, Plaintiff,

v.

## CROSSLAND MORTGAGE CORPORATION, Defendant.

Civil Action No. 96–12260–WGY.

United States District Court,
D. Massachusetts.

July 2, 1997.

Michelle Ann Weinberg, Edelman & Combs, Chicago, IL, Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Edelman & Combs, Chicago, IL, Edward K. O'Brien, The O'Brien Law Firm, Nashua, NH, for Alain Moniz.

R. Bruce Allensworth, Irene C. Freidel, Kirkpatrick & Lockhart, Boston, MA, for CrossLand Mortg. Corp.

John C. Englander, Thomas M. Hefferon, Goodwin, Procter & Hoar, Boston, MA, for Mortg. Bankers, Countrywide Home Loans, Inc., Parkway Mortg., Inc., Imperial Credit Indus., Inc.

### MEMORANDUM AND ORDER

YOUNG, District Judge.

Alain Moniz ("Moniz") commenced this purported class action suit against Cross-Land Mortgage Corporation ("CrossLand") for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607. Moniz moved pursuant to Fed. R.Civ.P. 23 to certify as a plaintiff class all those who took mortgage loans from Cross-Land in transactions in which the mortgage broker received a yield spread premium from CrossLand in addition to closing points from the borrower. This Court heard oral argument on the motion for class certification on May 8, 1997 and deferred ruling on the motion at that time in order to give Moniz the opportunity to file a motion for summary judgment.[1] Moniz filed such a motion but, on June 19, 1997, this Court denied it. The Court now turns its attention back to the undecided motion for class certification.

---

1. Calling for a motion for summary judgment before acting on the issue of class certification is a somewhat unorthodox but frequently helpful technique. Where a plaintiff class is sought, if counsel for the named plaintiff can frame a compelling motion, even for partial summary judgment, its allowance will operate with preclusive effect upon the defendant and will produce a substantive record that will inform the Court, as nothing else could, of the proper parameters of the plaintiff class and whether the named plaintiff will fairly and adequately represent that class. Further, as summary judgment may be taken against a moving party, *Andrews v. DuBois,* 888 F.Supp. 213, 220–21 (D.Mass.1995) (citing *National Expositions, Inc. v. Crowley Maritime Corp.,* 824 F.2d 131, 133 (1st Cir.1987) [Breyer, J.] ), implementing this technique has the potential for nipping a spurious class action case in the bud. Here, however, the viability of the plaintiff's legal theory depends on discrete facts and summary judgment is not warranted.

## I. Background

Moniz and his wife applied for a loan to refinance their home in New Bedford, Massachusetts, in April 1996, and retained Dream House Mortgage Company ("Dream House") as their mortgage broker. They applied for a first mortgage loan in the amount of $80,000 at 8% and second mortgage loan in the amount of $22,000 at 10.35%. Dream House pre-approved the loan applications for those amounts and locked Moniz into the 8% rate for the first mortgage loan. Dream House then submitted Moniz' first mortgage loan application to CrossLand for approval, and CrossLand approved the loan.

CrossLand is a national mortgage lender engaged in the business of purchasing and granting mortgage loans, both directly through retail operations and as a wholesale lender for broker-originated loans. When making broker-originated loans, CrossLand apparently competes with many other mortgage lenders by offering different rates and terms. According to CrossLand, brokers provide a number of valuable services, from application to closing, which benefit both the borrower and CrossLand. CrossLand's Vice President states that "[t]his bundle of services is of value to CrossLand because, among other things, these services provide the information and preparation that Cross-Land needs to finance the loan and they are services that CrossLand otherwise would be obliged to perform if the loan were a retail loan originated by CrossLand." Decl. of Michael S. Marks ¶ 6.

On May 13, 1996, CrossLand sent a Good Faith Estimate letter to Moniz disclosing an estimate of the closing costs and the fact that it would pay Dream House a yield spread premium (referred to by the parties as a "YSP"). Moniz' first mortgage loan closed on May 17, 1996. At the closing, Moniz signed a HUD–1A Settlement Statement that disclosed the existence, origin, and amount of all fees charged in connection with the mortgage transaction. CrossLand paid a yield spread premium of $922.50 as a broker's fee to Dream House and Moniz paid Dream House two points, or $1,640, as a closing fee.

CrossLand states that it paid the yield spread premium because Moniz' loan was an "above par" loan. As CrossLand explains, rate sheets establishing a "par" value for specific loans are set daily based on market forces. The par value reflects the price and interest rate at which CrossLand will issue or purchase a particular loan. If a broker presents a loan "below par," CrossLand does not pay any additional compensation to the broker. If the broker presents an "above par" loan, CrossLand will pay a yield spread premium for the loan.

The Complaint alleges that the $922.50 yield spread premium paid by CrossLand to Dream House was an illegal kickback for Dream House steering Moniz to CrossLand for a loan at a higher interest rate than CrossLand otherwise would have charged. Moniz now seeks to certify as a class all persons who satisfy the following criteria:

a. They entered into a residential mortgage transaction on or after November 12, 1995, which was documented as a transaction under [RESPA], in that a HUD Settlement Statement was provided to the borrower; and

b. Either;

(1) [CrossLand] was identified as the lender on the HUD Settlement Statement, or

(2) CrossLand provided the funds for the loan, and

c. The HUD Settlement Statement shows that separate payments were made to a person or firm identified in writing as the borrower's mortgage broker by:

(1) The borrower; and

(2) the lender; and

d. CrossLand's loan file contains no documents signed by the borrower which disclose that CrossLand's payment to the mortgage broker was for inducing the borrower to sign for a CrossLand mortgage loan at rates and terms above those rates and terms CrossLand otherwise would have made available to the borrower.

Plaintiff's Substituted Motion for Class Certification at 1–2. The proposed class contains approximately 18,000 members.

## II. Analysis

Pursuant to Fed.R.Civ.P. 23(a), this Court may certify a class if:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition, a class action may be maintained only if:

[t]he court finds that the *questions of law or fact common to the members of the class predominate over any questions affecting only individual members,* and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3) (emphasis added).

CrossLand argues that certification is inappropriate in this case as *individual* questions of law and fact predominate. Cross-Land bases this argument on the provision under which Moniz sues—section 8 of RES-PA.

Sections 8(a) and 8(b) of RESPA provide as follows:

(a) Business referrals

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

(b) Splitting charges

No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607. These sections are limited, however, by section 8(c) which provides that,

Nothing in this section shall be construed as prohibiting ... the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed....

12 U.S.C. § 2607(c).

The distinction between an illegal kickback and lawful compensation is explained more fully in HUD regulation 24 C.F.R. § 3500.14(g)(2) which states that:

If the payment of a thing of value bears no *reasonable relationship to the market value of the goods or services provided,* then the excess is not for services or goods actually performed or provided. These facts may be used as evidence of a violation of section 8 and may serve as a basis for a RESPA investigation. High prices standing alone are not proof of a RESPA violation. The value of a referral (i.e., the value of any additional business obtained thereby) is not to be taken into account in determining whether the payment exceeds the reasonable value of such goods, facilities or services. The fact that the transfer of the thing of value does not result in an increase in any charge made by the person giving the thing of value is irrelevant in determining whether the act is prohibited.

(emphasis added). According to CrossLand, section 8(c) of RESPA and the above quoted HUD regulation make class certification inappropriate in this case because they require this Court separately to analyze the reasonableness of every transaction in the proposed class of approximately 18,000 members in order to determine if the yield spread premium was bona fide compensation for goods or services furnished or whether it was an illegal kickback.

CrossLand relies on the case of *Sicinski v. Reliance Funding Corp.,* 82 F.R.D. 730 (S.D.N.Y.1979), where the court declined to certify a class under similar circumstances. In *Sicinski,* one defendant made mortgage loans to the plaintiff and other potential class members while the other defendant provided mortgage title insurance in the transactions. *Id.* at 731. The plaintiff alleged that the title insurer paid a fee to the mortgage lender's attorney in return for the attorney recom-

mending the defendant's title insurance services, and that this constituted an illegal kickback under section 8(a) of RESPA. The court denied the plaintiff's attempt to certify a class of 303 persons who engaged in these mortgage loan transactions. The court concluded that because RESPA permits compensation for services performed in conjunction with the transaction, common questions did not predominate. Rather, the court stated that:

> Whether [the title insurer] is liable under section 8(a), then, will depend upon whether its payments to [the lender's attorney] were *reasonably related to the services he rendered as examining counsel.* Those payments ranged from $104.10 to $264.60 in the 81 transactions that would be encompassed in the proposed class action. For each individual transaction, the Court would have to ascertain what services [the attorney] rendered and to decide whether [the title insurer's] *payment was reasonably related to those services.* In this inquiry, common questions certainly would not predominate. *See Schaffner v. Chemical Bank,* 339 F.Supp. 329, 334 (S.D.N.Y. 1972).

*Id.* at 733 (emphasis added). The court continued stating that:

> The plaintiff asserts that [the lender] violated section 8(b) of RESPA.... Like section 8(a), section 8(b) is qualified by the "reasonable relationship" test of section 8(c) and 24 C.F.R. § 3500.14(e). If this case were to proceed as a class action, the Court would have to ascertain what services [the attorneys] each rendered in 303 separate transactions and to decide whether the fees received by each were reasonably related to their work.

*Id.* The court therefore concluded that class certification was inappropriate.

This Court finds the reasoning in *Sicinski* persuasive. Pursuant to RESPA, the mortgage broker is entitled to earn his compensation through the lender, not just the borrower. 12 U.S.C. § 2607(c); *see also Buying*

*Your Home: Settlement Costs and Helpful Information,* 62 Fed.Reg. 31983, 31990 (Dep't of Housing and Urban Dev. June 11, 1997) ("Your mortgage broker may be paid by the lender, you as the borrower, or both."). So long as the ultimate combination of compensation is reasonable, the broker and borrower are entitled to negotiate the loan that best fits the needs of the transaction at issue. Thus, in order to resolve this dispute, this Court would have to evaluate each of the 18,000 transactions at issue to determine if the broker received the right amount of compensation, whether through points from the borrower, a yield spread premium from the lender, or both. This analysis necessarily would result in questions regarding individual members of the class predominating over questions common to the class.[2] See Fed.R.Civ.P. 23(b)(3). Class certification is therefore inappropriate.

## III. Conclusion

For the foregoing reasons, this Court hereby DENIES the motion for class certification.

### ADDENDUM

It would appear that the matters discussed herein are of some interest to the consumer bar and the mortgage loan industry generally. Indeed, a bill has been filed in Congress to declare a moratorium on just this sort of claim. H.R. 1283, 105th Cong. (1997). This intriguing bit of information led to a search of this District's computer database. It turns out that, when searched through the name of the plaintiff's counsel, Daniel A. Edelman, Esq. of Chicago, he has 17 pending cases in this district.

When queried about the relationship of these cases to the one at bar, Mr. Edelman informed the Court that he represents plaintiffs in another five cases in this district which raise virtually identical allegations against other lenders, *see Allard v. Accubanc Mortgage Co.,* Civil Action No. 96–12259–RCL (D.Mass.1996); *Favaloro v. Express*

---

2. Indeed, the case specific nature of this inquiry was apparent when this Court ruled on Moniz' motion for summary judgment. There, this Court found that the factual record did not clearly establish that the yield spread premium paid by CrossLand to Dream House was not reasonable compensation for goods or services.

*Funding, Inc.,* Civil Action No. 96–12258–EFH (D.Mass.1996); *Marier v. Long Beach Mortgage,* Civil Action No. 96–12320–EFH (D.Mass.1996); *Wilson v. Northwest Mortgage,* Civil Action No. 96–12350–EFH (D.Mass.1996); *Jereidini v. Imperial Credit Inc.,* Civil Action No. 97–10398–PBS (D.Mass.1997), as well as another half dozen similarly styled cases nationwide. While these cases involve different plaintiffs and different mortgage lenders, and thus are not "related" within the meaning of Local Rule 40.1(e), they are sufficiently similar that it is not unduly self regarding to think that litigants, counsel, and judges in those cases would be interested in the determination of the class certification issue herein. Unfortunately, at the present time the federal courts lack a nationwide electronic database containing comparable information on all federal cases, though the Administrative Office of the United States Courts is working on the problem. As pointed out in *Reisman v. KPMG Peat Marwick LLP,* 965 F.Supp. 165, 177 (D.Mass.1997), such a resource has the potential for significant savings in court transaction costs.