**C.H. DUBOSE, Plaintiff,**

·v.

**FIRST SECURITY SAVINGS BANK and Homeowner's Financial Services, Inc., Defendants.**

**No. CIV.A. 95–D–867–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 23, 1997.

C. Knox McLaney, III, Angela L. Kimbrough, Montgomery, AL, Louis C. Rutland, Union Springs, AL, James O. Latturner, Chicago, IL, Cathleen M. Combs, Daniel A. Edelman, Chicago, IL, for Plaintiff.

Dennis R. Bailey, Nathan Wayne Simms, Jr., Montgomery, AL, C. William Gladden, Jr., Birmingham, AL, for Defendants.

### *ORDER*

DE MENT, District Judge.

This cause is now presented to the court on the Recommendation of the Magistrate Judge, filed September 8, 1997, and Plaintiff's objections thereto, filed September 18, 1997.

The court has carefully read the Magistrate's Recommendation and considered the objections of counsel, and is of the opinion that said Recommendation is well taken and is due to be adopted, approved, and affirmed. It is, therefore, CONSIDERED and ORDERED as follows:

1. That Plaintiff's objections be, and the same are hereby, OVERRULED;

2. That the Recommendation of the Magistrate Judge in this cause be, and the same is hereby, ADOPTED, APPROVED, and AFFIRMED;

3. That the Motion for Class Certification filed by the Plaintiff on May 9, 1997 be and the same is hereby DENIED.

### RECOMMENDATION OF THE MAGISTRATE JUDGE

McPHERSON, United States Magistrate Judge.

The plaintiffs, C.H. Dubose and Betty Dubose, filed the complaint in this civil action pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, on 23 June 1995. The plaintiffs also alleged state law fraud and tortious interference with a contract causes of action. Jurisdiction is proper pursuant to 28 U.S.C. § 1331.

This case is now before the court on a motion for class certification filed by the plaintiffs on 9 May 1996. After careful consideration of the relevant case law, the arguments of counsel and the record as a whole, the Magistrate Judge recommends that the motion be DENIED.

### I. FACTS AND PROCEDURAL HISTORY

The facts as set forth by the district court in its 13 August 1997 memorandum opinion and order are as follows:

On 11 November 1994, the plaintiffs refinanced their home. The mortgage had a term of 15 years and bore an interest rate of 8.75%. The nominal creditor on the loan was defendant Homeowner's Financial Services ["HOFS"], but in fact, HOFS was merely a mortgage broker. The real source of the loan was defendant Flagstar ["Flagstar"] Bank formerly known as First Security Savings Bank. Flagstar and HOFS had entered an agreement whereby Flagstar agreed to fund loans made by HOFS in exchange for HOFS' promise to assign, upon closing, all of its rights and interest in the mortgage to Flagstar. This practice is known in the banking industry as "table funding".

Upon closing, the plaintiffs received what is known as a "HUD–1 Settlement Statement" which detailed all the costs and fees associated with the mortgage loan. The HUD–1 Settlement Statement revealed that the plaintiffs paid HOFS a loan origination fee of $616.00 (2% of the mortgage principle), a loan discount fee of $616.00 and a tax service fee of $67.00. Additionally, the Settlement Statement showed that a fee of $269.50 was paid to HOFS by Flagstar for "Par Plus Pricing." [1]

---

1. "Par-plus pricing" or "yield-spread premiums" are payments made by a financial institution to a

The plaintiffs filed their six-count complaint on 23 June 1995. In Count I, the plaintiffs claim that the defendants violated 12 U.S.C. § 2607 and Regulation X of the Real Estate Settlement Procedures Act ["RESPA"] by charging and/or receiving fees for settlement services that were duplicative, were not provided or were in fact prohibited referral fees. In Count II, the plaintiffs claim that the defendants' conduct violated the civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c). In Count III, the plaintiffs contend that Flagstar fraudulently induced them to obtain a mortgage at an interest rate above that which they could have otherwise obtained. In Count IV, the plaintiffs contend that Flagstar intentionally interfered with the contract between the plaintiffs and HOFS by inducing HOFS to obtain for the plaintiffs a mortgage which carried an inflated rate of interest. In Count V, the plaintiffs contend that Flagstar's conduct induced HOFS to breach its fiduciary duty to the plaintiffs. And, finally, in Count VI, the plaintiffs assert that Flagstar and HOFS committed fraud by representing that they were imposing legitimate charges on the plaintiffs in connection with the mortgage closing when, in fact, the charges were for services not performed or for non-existent services.

On 13 August 1997, the district court granted in part Flagstar's motions for full and/or partial summary judgment. Counts II, III, IV and V were dismissed. Presently, before the Magistrate Judge is the plaintiffs' motion for class certification which was filed on 9 May 1996.

## II. DISCUSSION

 The plaintiffs assert that the instant case is maintainable as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. The burden of establishing the specific prerequisites to a Rule 23 action falls on those seeking to certify their suit as a class action. *Gilchrist v. Bolger*, 733 F.2d 1551, 1556 (11th Cir.1984). Furthermore, in determining whether the plaintiffs have met his burden, the court's inquiry is limited to whether the requirements of Rule 23 have been satisfied; therefore, the court will not consider the merits of the plaintiffs' claims. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

In order to bring a class action under 23(b)(3), the plaintiffs must demonstrate that the case meets the prerequisites of Rule 23(a) which states in relevant part:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Fed.R.Civ.P. 23(a)*.

Here, the plaintiffs seek certification of a nationwide class under the provisions of Rule 23(b)(3).[2] Before a class can be certified under this provision of the class action rule, the court must find that "the questions of law or fact common to the members of the class predominate over questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." If the plaintiffs make the required

---

mortgage broker in return for the broker's selling a mortgage at an interest rate which is above "par."

**2.** The plaintiffs seek certification of a class (1) of all persons located anywhere within the United States who obtained a mortgage loan from a mortgage broker that obtained funding from Flagstar; (2) where the loan was made for personal, family or household purposes; and (3) the mortgage broker received an underwriting fee, a tax service fee, an amortization schedule fee, a document preparation fee where a processing fee was also imposed, a "yield spread premium," "service release premium," "par plus pricing" or payment (however denominated) from Flagstar to the broker, a "discount fee" where not discounted interest rate was provided, or total compensation to the originator exceeding 2% of the principal amount of the loan. The plaintiffs indicate that the class period is one year prior to the filing of the complaint with respect to Count I and two years prior to the filing of the complaint with respect to Count VI.

showing under subdivision (a), they must demonstrate that:

> the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

*Fed.R.Civ.P. 23(b)(3).*

## A. Real Estate Settlement Procedures Act

■ The Real Estate Settlement Procedures Act ["RESPA"] prohibits, among other things, providers of "settlement services" from paying "referral fees" or "kickbacks". Sections 8(a) and 8(b) of RESPA provide as follows:

> (a) Business referrals
>
> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.
>
> (b) Splitting charges
>
> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

*12 U.S.C. § 2607.* These sections are limited, however, by section 8(c) which provides that:

> Nothing in this section shall be construed as prohibiting ... the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed....

*12 U.S.C. § 2607(c).*[3] Flagstar contends that its payment to HOFS of a service release fee was a reasonable payment under § 2607(c). See Proposed Pretrial Order, p. 6.

In *Moniz v. Crossland Mortgage Corp.,* 175 F.R.D. 1, (D.Mass.1997), the plaintiff moved pursuant to Fed.R.Civ.P. 23 to certify as a plaintiff class all those who took mortgage loans from the defendant in transactions in which the mortgage broker received a yield spread premium from the defendant in addition to closing points from the borrower. The court denied the motion after concluding that class certification would have required it separately to analyze the reasonableness of every transaction in the proposed class to determine if the yield spread premium was bona fide compensation for goods or services furnished or whether it was an illegal kickback. The court stated that:

> Pursuant to RESPA, the mortgage broker is entitled to earn his compensation through the lender, not just the borrower. 12 U.S.C. § 2607(c); see also Buying Your Home: Settlement Costs and Helpful Information, 62 Fed.Reg. 31983, 31990 (Dep't of Housing and Urban Dev. June 11, 1997) ("Your mortgage broker may be paid by the lender, you as the borrower, or both."). So long as the ultimate combination of compensation is reasonable, the broker and borrower are entitled to negotiate the loan that best fits the needs of the transaction at issue. Thus, in order to resolve this dispute, this Court would have to evaluate each of the 18,000 transactions at issue to determine if the broker received the right amount of compensation, whether through points from the borrower, a yield spread premium from the lender, or both. This analysis necessarily would result in

---

**3.** The distinction between an illegal kickback and lawful compensation is explained more fully in HUD regulation 24 C.F.R. § 3500.14(g)(2) which states that:

> If the payment of a thing of value bears no reasonable relationship to the market value of the goods or services provided, then the excess is not for services or goods actually performed or provided. These facts may be used as evidence of a violation of section 8 and may serve as a basis for a RESPA investigation. High

prices standing alone are not proof of a RESPA violation. The value of a referral (i.e., the value of any additional business obtained thereby) is not to be taken into account in determining whether the payment exceeds the reasonable value of such goods, facilities or services. The fact that the transfer of the thing of value does not result in an increase in any charge made by the person giving the thing of value is irrelevant in determining whether the act is prohibited.

questions regarding individual members of the class predominating over questions common to the class. See Fed.R.Civ.P. 23(b)(3). Class certification is therefore inappropriate.

1997 WL at *4. The Magistrate Judge finds the reasoning in *Moniz* persuasive.

Equally persuasive is the reasoning of *Sicinski v. Reliance Funding Corp.*, 82 F.R.D. 730 (S.D.N.Y.1979), where the court declined to certify a class under similar circumstances and which was relied upon by the *Moniz* court. In *Sicinski*, one defendant made mortgage loans to the plaintiff and other potential class members while the other defendant, provided mortgage title insurance in the transactions. *Id.* at 731. The plaintiff alleged that the title insurer paid a fee to the mortgage lender's attorney in return for the attorney recommending the defendant's title insurance services and that this constituted an illegal kickback under section 8(a) of RESPA. The court denied the plaintiff's attempt to certify a class of 303 persons who engaged in these mortgage loan transactions. The court concluded that because RESPA permits compensation for services performed in conjunction with the transaction, common questions did not predominate. Rather, the court stated that:

> Whether [the title insurer] is liable under section 8(a), then, will depend upon whether its payments to [the lender's attorney] were reasonably related to the services he rendered as examining counsel. Those payments ranged from $104.10 to $264.60 in the 81 transactions that would be encompassed in the proposed class action. For each individual transaction, the Court would have to ascertain what services [the attorney] rendered and to decide whether [the title insurer's] payment was reasonably related to those services. In this inquiry, common questions certainly would

not predominate. See *Schaffner v. Chemical Bank*, 339 F.Supp. 329, 334 (S.D.N.Y. 1972).

82 F.R.D. at 733. The court continued stating that:

> The plaintiff asserts that [the lender] violated section 8(b) of RESPA.... Like section 8(a), section 8(b) is qualified by the "reasonable relationship" test of section 8(c) and 24 C.F.R. § 3500.14(e). If this case were to proceed as a class action, the Court would have to ascertain what services [the attorneys] each rendered in 303 separate transactions and to decide whether the fees received by each were reasonably related to their work.

82 F.R.D. at 733. The court therefore concluded that class certification was inappropriate.

This court is persuaded that to investigate Flagstar and its brokers' liability to the proposed plaintiffs, the trier of fact would need to investigate the services actually performed and the fees charged in each specific instance. Whether such fees were reasonable in each instance would require a comparison of the services performed by the broker for each individual with the amount of the fees charged in each instance. Such individual inquiries predominate over questions common to the class as a whole and make the certification of a 23(b)(3) class in this instance inappropriate.[4]

### B. The State Law Fraud Claim

■ In deciding whether the predominance and superiority requirements of Rule 23(b)(3) of the Federal Rules of Civil Procedure are met, the court may take into account variations in state law, *Castano v. American Tobacco Company*, 84 F.3d 734, 740 (5th Cir.1996), and problems of manageability. *See Andrews v. American Telephone*

---

**4.** A similar motion for class certification is pending before U.S. Magistrate Judge Charles Coody of this court. *See Briggs v. Countrywide Funding Corp.*, No. 95–D–859–N. Flagstar also submitted a copy of an order in *Badio v. Accubanc Mortgage Co.*, No. 96–12259–RCL (D. Mass July 2, 1997), and *Martinez v. Weyerhaeuser Mortgage Co.*, 959 F.Supp. 1511 (S.D.Fla.1997),—both unpublished cases—denying similar requests for class certification. As noted by the *Moniz* court, "[u]nfortu-

nately, at the present time the federal courts lack a nationwide electronic database containing comparable information on all federal cases, though the Administrative Office of the United States Courts is working on the problem." *Moniz*, 1997 WL at *4. The court encourages the parties in the future to apprise the court of similar cases, particularly those pending in this district court.

*& Telegraph Co.*, 95 F.3d 1014, 1023 (11th Cir.1996). It is, therefore, important to determine whether there are variations in state law or management problems which would foreclose certification of a class action in this case.

The plaintiffs' complaint indicates that their fraud claim is asserted solely against Flagstar. Complaint at ¶ 57. The plaintiffs contend that Flagstar "knowingly and with fraudulent intent induced" them and the putative class members "to enter into a loan contract" "at rates considerably above that which Flagstar" "had approved for each of them." *Id.* at ¶ 59. The plaintiffs argue that they each relied upon the fraudulent inducement in entering the loan contracts. *Id.* at ¶ 60. The defendants argue that the plaintiffs' fraud claim should not be certified because whether there was reliance on any representations made by Flagstar or by its agents must be evaluated on a case-by-case basis. See Proposed Pretrial Order, p. 8.

The plaintiffs seek to certify a nationwide class, numbering in the hundreds of thousands or perhaps millions, with regard to these issues.[5] The plaintiffs' request, however, cannot succeed. In order to prove fraud, there must be proof of reliance. As the Fifth Circuit recently noted, the law on reliance differs from state to state. "In a fraud claim, some states require justifiable reliance on a misrepresentation, while others require reasonable reliance." *Castano, supra,* 84 F.3d at 743. Resolution of those claims on behalf of a class will require the court to examine the facts and circumstances of each individual case to determine what the mortgage brokers did or did not do with regard to financing.[6]

The resolution of the damages issues on the state law claims would also be difficult because the plaintiffs seek punitive damages on behalf of the class. As noted in *Mack v. General Motors Acceptance Corp.,* 169 F.R.D. 671 (M.D.Ala.1996) (Thompson, J.), the treatment of punitive damages varies from state to state. *Id.* at 678 (*citing BMW of North America v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)). "In Alabama, for example, there is no cap on punitive damages while in other states there is. Thus, each claim will have to be examined in light of the punitive damages law of that state." 169 F.R.D. at 679.

In *Mack, supra,* the Chief Judge of this court declined to certify a nationwide class of car borrowers' state law claims against an automobile loan company for fraud, inducement of breach of contract and inducement of breach of fiduciary duty. Chief Judge Thompson ruled that questions of law and fact common to the class members did not predominate over questions affecting only individual members, where the company engaged in a nationwide practice of allowing dealers to charge more interest on loans than the company; the duty to disclose the difference in the interest rate depended on facts of the individual cases; the reliance standard for fraud varied among the states; the extent of reliance varied in individual cases; and the treatment of punitive damages varied from state to state. Other courts have similarly refused to certify a class where fraud is alleged. *See e.g. Andrews, supra,* 95 F.3d at 1023–1024 (mail and wire fraud allegations are not subject to class-wide resolution); *Pipes v. American Security Insurance Co.,* 169 F.R.D. 382, 384 fn. 2 (N.D.Ala.1996) ("Fraud claims are almost always poor candidates for class certification because of the individual reliance issues required for recovery and the class members' strong interests in litigating their own individualized claims").

Because the plaintiffs have failed to establish the necessary elements of predominance and superiority, this case should not be certified as a nationwide class action on the state law claims.

---

5. The plaintiffs indicated that Flagstar has $400 million in outstanding loans. Pfs.' Memo. In Support of Motion for Class Certification, p. 5. In their memorandum opposing the defendants' motion for summary judgment, the plaintiffs state that Flagstar maintains offices in 48 states and during 1995, originated more than $3 billion in residential mortgage loans. Pfs.' Memo. In Opposition to Flagstar's Motion for Summary Judgment, p. 8 fn. 2.

6. The plaintiffs seek the certification of a class of individuals whose loans were originated by HOFS or by other mortgage brokers. This adds another level of individual inquiry to the process.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the motion for class certification filed by the plaintiffs on 9 May 1996 be DENIED.

### ORDER

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve by mail a copy thereof on the parties to this action. The parties are DIRECTED to file any objections to the said Recommendation within a period of 13 days from the date of mailing. Any objections filed must specifically identify the objectionable findings in the Magistrate Judge's Recommendation. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir.1982). *See, Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981, *en banc* ), adopting as binding precedent all of the decisions of the former Fifth Circuit promulgated prior to the close of business on 30 September 1981.

DONE this 8th day of September, 1997.