John **BRANCHEAU and Blanca
Brancheau, Plaintiffs,**

v.

**RESIDENTIAL MORTGAGE GROUP,
INC., and Mercantile Bank of St.
Louis, N.A., Defendants.**

No. Civ. 97–53 (JRT/RLE).

United States District Court,
D. Minnesota.

Dec. 11, 1997.

Vildan A. Teske, St. Paul, MN, for Plaintiffs.

Edward M. Laine, Minneapolis, MN, for Residential Mortgage Group, Inc.

Mark Arnold, Ann Kramer, St. Louis, MO, for Mercantile Bank of St. Louis, N.A.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Plaintiffs' timely[1] Motion for Leave to Amend Complaint. See, *Rule 15(a), Federal Rules of Civil Procedure;* see also, *Pretrial Order of May 27, 1997.*

A Hearing on the Motion was conducted on July 21, 1997, at which time the Plaintiffs appeared by Vildan A. Teske, Esq.; the Defendant Residential Mortgage Group, Inc. ("Residential") appeared by Edward M. Laine, Esq.; and Defendant Mercantile Bank of St. Louis, N.A. ("Mercantile") appeared by Mark Arnold and Ann Kramer, Esqs.

For reasons which follow, we deny the Plaintiffs' Motion to Amend.

### II. *Factual and Procedural Background*

In May of 1996, the Plaintiffs obtained a $122,800 loan from Residential. As a mortgage broker, Residential secured the loan and, thereafter, promptly sold its interest in the loan to Mercantile. As part of the referral transaction, Mercantile paid Residential what is known as a "yield spread premium," in the amount of $767.50. The propriety of this payment is the crux of the instant action.

---

1. We grant the Plaintiffs' Motion for an Extension of Time and, thereby, we allow them to seek leave to Amend their Complaint notwithstanding their failure to have the Motion heard prior to the pertinent deadline of June 30, 1997. As we noted, at the time of the Hearing, the slight extent of the Plaintiff's tardiness does not weigh heavily on the Defendants, or upon this Court. While the time constraints of a Scheduling Order are not easily malleable, they also are not permanently inelastic, when cause for modification has been shown, as it has been demonstrated here.

In their Complaint, the Plaintiffs question the legality of the payment of the yield spread premium, as between the two Defendants, under the Real Estate Settlement Practices Act ("RESPA"), *Title 12 U.S.C. § 2601 et seq.,* and they assert that the actions of each of the Defendants violate State common law.[2] As the parties agree, RESPA prohibits the payment of kickbacks in exchange for the referral of real estate settlement services involving a federally related mortgage loan, with certain enumerated exceptions. See, *Title 28 U.S.C. § 2607; 24 C.F.R. § 3500.14.* Any person who gives, or who accepts, a prohibited referral fee is "jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service." *Title 12 U.S.C. § 2607(d)(2).*

Proceeding under a theory that the payment of a yield spread premium is, *per se,* violative of RESPA, and that such a payment routinely occurs in the loan referral transactions between the Defendants, the Plaintiffs filed their Complaint as a class action. As originally defined in the Complaint, the proposed class of Plaintiffs, who are to be certified under Rule 23, *Federal Rules of Civil Procedure,* are defined as follows:

The class consists of all persons who:

a. Entered into a residential mortgage transaction that was documented as a transaction under RESPA, in that a HUD–1 Settlement statement was provided (Exhibit A);

b. The loan was originated in the name of Residential or was funded by Residential and assigned to Mercantile within two weeks of the closing; and:

c. The HUD–1 Settlement Statement shows that a "yield spread premium," "yield spread differential," "par-plus premium," "service release premium," or the like was paid to a mortgage broker or originator.

*Compl.* ¶ 27.

In other words, the currently proposed Plaintiff-class is limited to those individuals who

obtained a loan from Residential, which was referred to Mercantile, in exchange for a yield spread premium. The class has not, as yet, been certified.

Now, the Plaintiffs seek leave to amend their Complaint in order to significantly broaden the proposed class of Plaintiffs. The proposed Amended Complaint would create two larger subclasses, of which the first would consist of all persons who:

a. Entered into a residential mortgage transaction that was documented as a transaction under RESPA, in that a HUD–1 Settlement Statement was provided (Exhibit A).

b. The loan was funded by a person other than Residential; and

c. The HUD–1 Settlement Statement shows that a "yield spread premium", "yield spread differential", "par-plus premium", "service release premium", or the like was paid to Residential.

*Proposed Am. Compl.* ¶ 27.

The first subclass would include everyone within the original class of Plaintiffs, together with any person who obtained a federally related loan from Residential, which was serviced by any other lender than Mercantile.

The second subclass of Plaintiffs, as proposed in the Amended Complaint, would include all persons who:

a. Entered into a residential mortgage transaction that was documented as a transaction under RESPA, in that a HUD–1 Settlement Statement was provided;

b. The loan was originated in the name of a broker or was funded by a broker and assigned to Mercantile within two weeks of the closing; and

c. The HUD–1 Settlement Statement shows that a "yield spread premium", "yield spread differential", "par-plus premium", "service release premium",

---

**2.** Count III of the Complaint alleges that Mercantile intentionally interfered with the Plaintiffs' contractual relationship with Residential. See

*Compl.* ¶ 49. Count IV asserts that Residential, in the same transaction, breached its fiduciary duty to the Plaintiffs. *Id.* ¶ 54.

or the like was paid by Mercantile to a mortgage broker or originator.

*Proposed Am. Compl.* ¶ 28.

We understand this proposed subclass to include any person who obtained a federally related loan from any mortgage broker, which was serviced by Mercantile in exchange for a yield spread premium.

As Mercantile purchases home mortgage loans from approximately 150 mortgage brokers in 20 states, and Residential refers loans to approximately 20 different lenders, it appears that the class of Plaintiffs, as defined in the proposed Amended Complaint, would be a transcontinental collage of persons exponentially more numerous than the currently proposed putative class. Largely for this reason, the Defendants oppose the Plaintiffs' Motion to amend their Complaint. As stated by the Defendants, their objection rests on their belief that the proposed amendment to the Plaintiffs' Complaint would be futile, because the proposed class of Plaintiffs could not, as a matter of law, satisfy the certification requirements of Rule 23, *Federal Rules of Civil Procedure.*

### III. *Discussion*

A. *Standard of Review.* Where, as here, the Plaintiffs seek to amend their Complaint after the initial round of pleading, Rule 15(a), Federal Rules of Civil Procedure, dictates that leave to amend should be "freely given when justice so requires." The Supreme Court has explained the purposes of Rule 15(a) as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of such an apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); see also,

*ARE Sikeston v. Weslock National, Inc.,* 120 F.3d 820, 832 (8th Cir.1997); *Thompson–El v. Jones,* 876 F.2d 66, 67 (8th Cir.1989).

Thus, although we begin with a presumption of liberality, an amendment to a pleading can be successfully challenged on grounds of futility, if the claims created by the amendment would not withstand a Motion to Dismiss for failure to state a claim upon which relief can be granted. See, *Humphreys v. Roche Biomedical Laboratories, Inc.,* 990 F.2d 1078, 1082 (8th Cir.1993); *Weimer v. Amen,* 870 F.2d 1400, 1407 (8th Cir.1989); *Holloway v. Dobbs,* 715 F.2d 390, 392–93 (8th Cir.1983); *Norbeck v. Davenport Community Sch. Dist.,* 545 F.2d 63 (8th Cir.1976), cert. denied, 431 U.S. 917, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977); but cf., *Karl's Inc. v. Sunrise Computers, Inc.,* 901 F.2d 657, 660 (8th Cir.1990) ("colorable showing" sufficient to withstand application of clearly frivolous rule).

Although the Rule 12(b)(6) standard, as employed to determine the futility of a proposed amendment, is not entirely apposite when considering an amendment that seeks to modify the scope of a class of plaintiffs, the tenor of its threshold requirements can be applied, analogically, to the question of whether the Amended Complaint describes a class of Plaintiffs that *could* be certified under the tenets of Rule 23. Indeed, a number of Courts have applied the class certification requirements of Rule 23 when evaluating whether to grant a plaintiff leave to amend a Complaint so as to define a proposed class of Plaintiffs. See, e.g., *Henderson v. National R.R. Passenger Corp.,* 117 F.R.D. 620, 622 (N.D.Ill.1987) (proposed amended complaint fails to assert sufficient factual basis to establish class action prerequisites); *Scarpino v. Grosshiem,* 852 F.Supp. 798, 807 (S.D.Iowa 1994) (because Court granted class certification, amendment of Complaint to class action not futile); *Nickson v. Schweiker,* 98 F.R.D. 656, 657 (E.D.Pa.1983) (denying leave to amend because atypicality of named Plaintiff's claim, compared with that of class, would make amendment a futile gesture). We remain mindful, however, that the actual question, of whether a proposed class of Plaintiffs should be included in an amended Complaint, is "more appropriately addressed

in the context of [a Motion] to certify the proposed [class]." *Academy of Ambulatory Foot Surgery v. American Podiatry Ass'n,* 516 F.Supp. 378, 380 (S.D.N.Y.1981) (granting leave to amend without considering Defendants' arguments that proposed classes do not meet certification requirements). Accordingly, we do not believe that the proper inquiry is whether the proposed class does, in fact, meet the certification requirements, for *Foman* directs us, in this context, to apply the Rule 23 criteria more loosely, such that we need only determine whether the proposed class *could* be certified.[3]

B. *Legal Analysis.* The Defendants opposition to the proposed Amendment is twofold. First, they contend that an attempt to expand the class, as the Plaintiffs have proposed, would necessitate an examination a heterogenous array of loan referral transactions, between each of the named Defendants, and a score of brokers and lenders, each of which would pose distinctive factual and legal questions under RESPA. Second, they contend that, since two of the Plaintiffs' claims against the Defendants are founded upon State common law, the expansion of the class of Plaintiffs so as to include transactions that occurred in at least twenty States, would make the case wholly unmanageable, as the Court and the parties are called upon to survey, and to apply, a wide variety of substantive State laws. We address these concerns with the focus provided by Rule 23.

1. *Standard of Review*

a. *Class Certification Prerequisites.* Rule 23, which governs class actions brought in Federal Courts, establishes four threshold requirements:

(1) the class is so numerous that joinder of all members is impracticable, [i.e., "numerosity"]; (2) there are questions of law or fact common to the class, [i.e., "commonality"]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [i.e., "typicality"]; (4) the representative parties will fairly and adequately protect the interests of the class [i.e., "adequacy"].

*Rule 23(a), Federal Rules of Civil Procedure.*

As the Supreme Court has emphasized, the latter three prerequisites of Rule 23(a) tend to merge and " 'serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly represented.' " *Amchem Products v. Windsor,* —— U.S. ——, ——, n. 20, 117 S.Ct. 2231, 2251, n. 20, 138 L.Ed.2d 689 (1997), quoting *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157, n. 13, 102 S.Ct. 2364, 2371, n. 13, 72 L.Ed.2d 740 (1982).

i. *Numerosity.* In order to certify a class action, a Court must first be satisfied "that the class of plaintiffs is so large that joinder of all members would be 'impracticable.' " *In re Potash Antitrust Litigation,* 159 F.R.D. 682, 689 (D.Minn.1995), quoting *In re Federal Skywalk Cases,* 680 F.2d 1175, 1178 (8th Cir.1982), cert. denied, 459 U.S. 988, 103 S.Ct. 342, 74 L.Ed.2d 383 (1982). The Defendants do not dispute that the potential class of Plaintiffs would satisfy the numerosity requirement and, therefore, we need not elaborate further on this aspect of the issue.

ii. *Commonality.* To establish commonality, the Plaintiffs must show that there are significant "common questions of law or fact among the members of the class," although individual class members need not be identically situated. *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 561 (8th Cir.1982) cert. denied, 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983); see also, *Jenson v. Eveleth Taconite Co.,* 139 F.R.D. 657, 664 (D.Minn.1991); *Morgan v. United Parcel Service of America, Inc.,* 169 F.R.D. 349 (E.D.Mo.1996). "The commonality prerequisite will be satisfied

---

**3.** Apart from the fact that the "futility" standard is dictated by the Supreme Court's holding in *Foman,* we think it makes as much sense to apply that standard when an amendment seeks to modify the scope of a putative class, as when the amendment attempts to assert a claim which is legally untenable. In determining that the proposed class could not be certifiable, as a matter of law, we merely give recognition to the fact that the parties, and the Court, should not be put to the task of litigating newly developed claims that have no proper basis to be litigated in the vessel of a representative action.

'when the legal question linking the class members is substantially related to the resolution of the litigation.'" *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995), cert. denied *sub nom., Crehan v. De-Boer*, 517 U.S. 1156, 116 S.Ct. 1544, 134 L.Ed.2d 648 (1996), quoting *Paxton v. Union Nat'l Bank*, supra at 561. Rule 23(a)(2) merely requires that "the course of conduct giving rise to a cause of action affects all class members, and that at least one of the elements of that cause of action is shared by all class members." *Lockwood Motors, Inc. v. General Motors Corp.*, 162 F.R.D. 569, 575 (D.Minn.1995), citing *Newburg, Class Actions § 3.10*, at 3–50 (observing that "[t]he test or standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative—that is, there need be only a single issue common to all members of the class *** this requirement is easily met in most cases").

Under this standard, Courts have found class commonality in the face of fairly wide differences between the classmembers' individual circumstances. In *DeBoer*, the Eighth Circuit affirmed a finding of commonality with respect to a class action which claimed that the Defendant's escrow practices violated RESPA, even though the individual Plaintiff's claims arose from different types of mortgage transactions. *DeBoer v. Mellon Mortgage Co.*, supra at 1174. In *Paxton*, the Court found commonality between black employees with different positions, and qualifications, in a class action that complained of discriminatory promotion practices. *Paxton v. Union Nat'l Bank*, supra at 561 ("Obviously, the bank's allegedly discriminatory promotion procedures will affect individual employees in different ways because of their diverse qualifications and ambitions," and, therefore, "[t]hese factual variations are not sufficient to deny class treatment to the claims that have a common thread of discrimination").

iii. *Typicality*. In the context of Rule 23(a)(3), "[t]ypicality *** means that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540, quoting *Donaldson v. Pillsbury*

*Co.*, 554 F.2d 825, 830 (8th Cir.1977), cert. denied, 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977). Like commonality, the burden of establishing typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortgage Co.*, supra at 1174; see also *Alpern v. UtiliCorp United, Inc.*, supra at 1540; *Paxton v. Union Nat'l Bank*, supra at 562. Typicality "is satisfied 'when the claims of the named plaintiffs emanate from the same event or are based on the same legal theory as the claims of the class members.'" *Lockwood Motors, Inc. v. General Motors Corp.*, supra at 575, quoting *In re Workers' Compensation*, 130 F.R.D. 99, 105 (D.Minn.1990). "Thus a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences," between members of the class. *In re Potash Antitrust Litigation*, supra at 690.

iv. *Adequacy of Representation*. In order to demonstrate that the named Plaintiffs will "fairly and adequately protect the interests of the class" they must show "that (1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously, and (2) each representative's interests are sufficiently similar to those of the class such that it is unlikely that their goals and viewpoints will diverge." *Lockwood Motors, Inc., v. General Motors Corp.*, supra at 576; see also *DeBoer v. Mellon Mortgage Co.*, supra at 1175 ("no indication that [Plaintiff's] interest was antagonistic to the remainder of the class or that the claims were not vigorously pursued"); *In re Potash Antitrust Litigation*, supra at 690.

b. *Maintenance of a Class Action*. If these universally applied prerequisites have been satisfied, a Court may then certify a class if it finds that the action is maintainable under Rule 23(b)(1), (2), or (3). Of relevance here, is the residual authority of Rule 23(b)(3) to certify a class action "for situations in which 'class-action treatment is not as clearly called for' as it is in Rule 23(b)(1) and (b)(2) situations," but "where [a] class suit 'may nevertheless be convenient and desirable.'" *Amchem Products, Inc. v. Windsor*, supra at ——, 117 S.Ct. at 2245, quoting

*Adv. Committee Notes, Title 28 U.S.C.App., p. 697.*

To qualify for certification under Rule 23(b)(3), a class must meet two requirements, in addition to the Rule 23(a) prerequisites: (1) common questions of law or fact must "predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Rule 23(b)(3), Federal Rules of Civil Procedure.* The provision then enumerates a non-exhaustive list of factors that will inform a Court's exploration of the "predominance" and "superiority" criteria:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.*

Among the factors, which render class actions under Rule 23(b)(3) more "convenient and desirable" than individualized litigation, is that class actions allow the " 'aggregat[ion of] the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem Products, Inc. v. Windsor,* supra at ——, 117 S.Ct. at 2246, quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir.1997); see also *Adv. Committee Notes, Title 28 U.S.C.App.,* p. 698 ("the class may have a high degree of cohesion and prosecution of the action through representatives would be quite unobjectionable, or the amounts at stake for individuals may be so small that separate suits would be impracticable"). Necessarily, Rule 23(b)(3) must strike a balance between this interest, and that of each plaintiff "in individually controlling the prosecution of his case." *Amchem Products, Inc. v. Windsor,* supra at ——, 117 S.Ct. at 2246.

i. *Predominance.* "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at ——, 117 S.Ct. at 2249. In *Amchem Products,* the Supreme Court held that, in a nationwide class action against asbestos manufacturers, uncommon individual questions concerning the divergent health consequences of asbestos exposure, and variations in the applicable State laws, prevented the class from satisfying the predominance standard. *Id.* at ——, 117 S.Ct. at 2250. By contrast, "a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *In re Potash Antitrust Litigation,* supra at 693, citing *In re Workers' Compensation,* supra at 108. Thus, although "[d]ifferences in state law *** compound the[ ] disparities between class members' claims," *Amchem Products, Inc. v. Windsor,* supra at ——, 117 S.Ct. at 2250, if "one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters [such as State common law claims] will have to be tried separately." *7A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure,* § 1778, at 528–30. Although individual differences in applicable State law weigh against the predominance of common issues, a single common question may still predominate such that a class action may be maintained.

ii. *Superiority.* Courts, for the most part, have wisely decided not to attempt to articulate a bedrock standard of when a class action "is superior to other available methods for the fair and efficient adjudication of the controversy." *Rule 23(b)(3), Federal Rules of Civil Procedure.* Rather, such a determination is purely "committed to the discretion of the district court 'because that court generally has a greater familiarity and expertise with the practical and primarily factual problems of administering a lawsuit ***.' " *Andrews v. AT & T Co.,* 95 F.3d 1014, 1022 (11th Cir.1996). Naturally, the four considerations, that are enumerated in Rule

23(a)(3), inform the District Court's exercise of discretion, but the determination of superiority often turns on the manageability, and the efficiency, of the proposed class action, in contrast to other, alternative methods of suit. See, e.g., *Minnesota v. U.S. Steel Corp.*, 44 F.R.D. 559, 572 (D.Minn.1968) (infeasability of individual antitrust actions against six steel manufacturers makes class action superior); *Valentino v. Carter–Wallace*, 97 F.3d 1227, 1234–1235 (9th Cir.1996) ("Where class-wide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation"); *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1085 (6th Cir.1996) (burden of making individualized determinations for class members fatal to superiority requirement).

2. *Legal Analysis.* Not surprisingly, the parties' view of the certifiability of the class, as it has been defined in the proposed Amended Complaint, varies substantially. From the Plaintiffs' perspective, a common, dominant issue is presented which overshadows any differences in the individualized claims of the putative classmembers. As framed by the Plaintiffs, the common issue is simply "whether the payment of yield spread premiums violates Section 2607 of RESPA." This question, the Plaintiffs assert, will be common to the profusion of referral transactions, between the various lenders and loan brokers, as the records will reflect that each of the transactions were subject to a yield spread premium, or something similar. Of course, the Plaintiffs' characterization of the dominant claim necessarily assumes that the term "yield spread premium," or a similar phraseology, has a universal meaning, and application, among all of the brokers and lenders, nationwide, who are alleged to have included such payments as consideration for loan referrals.

In contrast, the Defendants frame the asserted RESPA violation as having no common, dominant theme—varying widely, from broker to broker, lender to lender, and transaction to transaction. According to the Defendants, even if one assumed that the loan referral transactions, between Residential and Mercantile, were sufficiently uniform to permit the maintenance of a class action to challenge some aspect of those transactions, the nature of the relationships between Mercantile and 150 brokers, and the relationships between Residential and numerous lenders, vary extensively according to the business practices of each firm. In the Defendants' view, a RESPA violation can only be proven by establishing both that a yield spread premium was paid and, secondly, that the particular premium was paid for an above-market interest rate, rather than for services rendered, or for a fair market value of the loan referral. The second element to the RESPA claim, they contend, can only be established by examining each loan so as to determine whether the premium reflects the market conditions on the day that the premium was paid. The Defendants also emphasize that the inclusion of State common law claims, as an aspect of the proposed class action, will eclipse any issues that would be common to all members of the proposed class.

To assist our consideration of the Motion, the parties have submitted copies of largely unpublished District Court opinions, which have addressed whether similar class actions, under RESPA, should be certified. Although these decisions are of no particular precedential value, they do provide perspective and insight on how the same, or similar issues, have been commonly resolved.

In *Moniz v. Crossland Mortgage Corp.*, 175 F.R.D. 1 (D.Mass.1997), the plaintiffs sought to certify a class of approximately 18,000 mortgagors who had engaged in loan transactions with the defendant, in a suit which claimed that the defendant had routinely violated RESPA by paying yield spread premiums to mortgage brokers. The Court analyzed the certification issue under the rubric of Rule 23(a) and (b)(3), and determined that class certification would be inappropriate since the resolution of the merits of the action "necessarily would result in questions regarding individual members of the class predominating over questions common to the class." *Id.* at *4. In so concluding, the Court found the HUD regulations to be determinative. One of the regulations prescribes the analysis, which is necessary to a determination of whether a referral payment

is lawful compensation or an illegal kickback, in the following terms:

> If the payment of a thing of value *bears no reasonable relationship to the market value of the goods or services provided, then the excess is not for services or goods actually performed or provided.* These facts may be used as evidence of a violation of section 8 and may serve as a basis for a RESPA investigation. High prices standing alone are not proof of a RESPA violation. The value of a referral (i.e., the value of any additional business obtained thereby) is not to be taken into account in determining whether the payment exceeds the reasonable value of such goods, facilities or services.

*24 C.F.R. § 3500.14(a)(2)* (emphasis added). Therefore, the Court reasoned, in order to determine whether the yield spread premium paid bore no reasonable relationship to the market value of the referral, the "Court would have to evaluate each of the 18,000 transactions at issue to determine if the broker received the right amount of compensation, whether through points from the borrower, a yield spread premium from the lender, or both." *Moniz v. Crossland Mortgage Corp.*, supra at *4.

Similarly, in *Mentecki v. Saxon Mortgage Inc.*, Civ. No. 96–1269–A, 1997 WL 45088, slip. op. at 4 (E.D.Va. July 11, 1997); and in *Martinez v. Weyerhaeuser Mortgage Co.*, 959 F.Supp. 1511, 1515 (S.D.Fla.1997), the Courts rejected analogous issues in the context of a Motion for class certification. There, the Court held that common issues would not predominate, since the legitimacy of yield spread premium payments must be determined individually, by comparing the premium to the value of the goods or services provided. *Mentecki v. Saxon Mortgage*, supra at 4. In fact, the Courts not only refused to certify the Plaintiff class with respect to the RESPA claims, which were closely similar to those that the Plaintiff proposes here, but it also refused to certify the multi-state class with respect to the State common law claims, on the ground that the resulting action would be completely unmanageable in view of the divergent legal theories that would arise under the laws of the fifty perti-

nent jurisdictions. *Martinez v. Weyerhaeuser Mortgage Co.*, supra at 1515–16.

In contrast, the Plaintiffs have submitted *McDermott v. Mercury Capital Svc., Inc.*, 1:94–cv–1524–MHS, slip. op. (N.D.Ga. July 12, 1997), which allowed the certification of a class of plaintiffs who had asserted that the defendant there had accepted "service release fees" from various lenders in violation of RESPA. *Id.* at 5. The Court held that the commonality and typicality requirements were met, because the 189 transactions, which were at issue in that case, were "almost identical." *Id.* at 4.

Given these pertinent authorities, and our own independent research, we conclude that the Plaintiffs' Motion for Leave to Amend should be denied on futility grounds, because the Motion seeks to redefine the class in such a way as to diffuse the judicial inquiry amongst the divergent loan referral practices of literally scores of brokers and lenders throughout the breadth of the nation. See, *Henderson v. National R.R. Passenger Corp.*, supra at 622. Even in those cases in which class certification has been denied, the myriad of variables presented for the Court's analysis have been far less sweeping than those presented by the Plaintiffs' proposed amendment. Cf., *Moniz v. Crossland Mortgage Corp.*, supra (certification denied for class of Plaintiffs engaged in transactions with single lender). On the other hand, in the case cited by the Plaintiffs, the Court certified a comparatively confined class of Plaintiffs, who sought review of a mere 189 similar transactions.

We need not, and do not, determine whether the class, which is defined in the Plaintiffs' original Complaint, is sufficiently discrete to satisfy the requirements of Rule 23, for we merely decide that the proposed class, which vastly expands the scope of the original class, is not certifiable. In our considered view, the proposed class cannot, even colorably, meet either of the requirements of 23(b)(3) and, therefore, we need not consider the Defendants' stated concerns over the adequacy of the Plaintiffs as class representatives.

a. *Commonality and Predominance.* Since the requirement of "common questions

of law and fact" is inextricably intertwined with the constraint that those questions "predominate over any questions affecting individual members," we analyze them as one. In this respect, whether the payment of yield spread premiums violates RESPA is a "legal question 'linking the class members *** substantially related to the resolution of the litigation,'" *DeBoer v. Mellon Mortgage Co.*, supra at 1174, such that the attempt, by the proposed classmembers, to satisfy the relatively low threshold of "commonality" would clearly not be futile. See, *Lockwood Motors, Inc. v. General Motors Corp.*, supra at 575. The requirement of Rule 23(b)(3), however, that common issues predominate, cannot be satisfied.

According to the Plaintiffs, the common and predominant question, which is shared by all of the members of each of the proposed subclasses, is whether the practice of including yield spread premiums, as consideration for referrals of federally related loans, violates RESPA. While facially true, that definition of the inquiry is both superficial, conclusory, and inaccurate. While the ascertainment of the law may raise common issues of legal interpretation, the application of that law, to a myriad of factually distinct transactions, unavoidably raises a plethora of individualized determinations, which elude a broad, encompassing resolution. The Plaintiffs' construction of Rule 23 does violence to the balance struck by its drafters. In contrast to the Plaintiffs' contention, a class definition "will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *In re Potash Antitrust Litigation*, supra at 693. Such a definition is not presented by the Plaintiffs' proposed Amended Complaint.

We agree with the Court, in *Moniz*, that the pertinent provisions of the Code of Federal Regulations effectively eliminates the potential for "generalized evidence," which will prove, or disprove, that yield spread premium payments violate Title 12 U.S.C. § 2607. See, *Moniz v. Crossland Mortgage Corp.*, supra at *3. As noted, the HUD regulations require a comparison of the market value of the loan referrals at issue, and the yield spread premiums paid. See, *24 C.F.R. § 3500.14(a)(2)*. Arguably, the Plaintiffs might be able to maintain a class action, which asserts a common claim that all yield spread premiums paid by Mercantile to Residential did not reflect the market value of the referral, since it is conceivable that the relationship between the two firms has established a common method of calculating the premium paid. However, that potential for commonality disappears when the relationships at issue encompass a vast array of lenders and brokers whose loan referral practices are subject to localized differences.[4] Of course, on the Record before us, we do not hold that the localized practices have varied—although that conclusion would seem unavoidable—we merely hold that the commonality of a singular relationship, between one lender, and one broker, would be vitiated by the nearly limitless number of relationships, between innumerable lenders and brokers, which would be presented by an allowance of the proposed Amended Complaint. Moreover, with respect to the State law claims of the proposed class members, any commonalities in their claims would be completely dwarfed by the differences in the varyingly applicable State laws. See *Amchem Products, Inc. v. Windsor*, supra at ——, 117 S.Ct. at 2250. Accordingly, we are unable to conclude that the proposed subclasses "are sufficiently cohesive to warrant adjudication by representation." *Id.* at ——, 117 S.Ct. at 2249.

b. *Superiority of the Proposed Action.* Far from a superior method of adjudication, we find it inevitable that, if the proposed class were allowed to proceed, what was a relatively straightforward action involving

---

4. *Culpepper v. Inland Mortgage Corp.*, 953 F.Supp. 367 (N.D.Ala.1997), is illustrative of this point. There, the Court granted summary judgment to the Defendants in a similar RESPA claim by an individual Plaintiff because the Defendants had made a particularized "unrebutted evidentiary showing that the yield spread was determined by market forces." *Id.* at 372, n. 8. The maintenance of the class action, as proposed in the Amended Complaint, would make a similar analysis a virtual impossibility.

the business practices of the two Defendants, would devolve into an unmanageable thicket of individualized claims. As proposed, the Amended Complaint seeks an unfocused assessment of the loan referral practices of a broad expanse of the lending industry as a whole, with an apparent abandon of the practical considerations of judicial economy and efficiency. As a consequence, we deny the Motion for Leave to Amend as futile, since we find no responsible basis for a certification of the class proposed by the Amended Complaint.

NOW, THEREFORE, It is—

ORDERED:

1. That the Plaintiff's Motion Requesting Permission to Amend Complaint [Docket No. 15] is DENIED.

2. That the Plaintiff's Motion for Extension of Time [Docket No. 15] is GRANTED.